## Clair et ux. v. Noce et ux.

*Pincus & Pechter*, for plaintiffs.

*Abraham Berkowitz*, for defendants.

OLIVER, P. J., April 6, 1950.—This matter is before the court on plaintiff's complaint in assumpsit and de-

fendants' preliminary objection thereto in the nature of a demurrer.

Under the terms of a written agreement dated July 20, 1948, plaintiffs agreed to sell and convey, and defendants agreed to purchase and pay for certain real estate situated at 1516 Widener Place in the City of Philadelphia, at the price of $13,500. The covenants of the contract provide that the purchase money should be paid in the following manner: $500 at the time of executing the agreement; $500 on July 26, 1948; a first mortgage in the sum of $9,000 to be taken by the seller, payable within one year at five percent interest, and the balance in cash at settlement. Defendants paid plaintiffs the sum of $1,000 under the agreement, and subsequently informed plaintiffs of their inability to make settlement in accordance with the terms of the agreement of sale. Whereupon plaintiffs placed the aforesaid real estate upon the market for resale, and sold the same on April 20, 1949, to Milton and Sylvia Odenheimer for $11,750.

In this action plaintiffs seek to recover from defendants the sum of $1,266.75, representing the loss on resale and certain costs connected therewith.

Defendants' preliminary objection attacks the complaint on the ground that the settlement clause in the agreement of sale precludes plaintiffs from maintaining the present action.

That clause provides: ". . . Should the buyer fail to make settlement as herein provided, the sum or sums paid on account *are to be retained* by the seller, *either on account of the purchase money, or as compensation for the damages and expenses he has been put to in this behalf, as the seller shall elect,* and in the latter case this contract shall become null and void and all copies to be returned to seller for cancellation." (Italics supplied.)

Plaintiffs contend that the settlement clause gives them the two remedies set forth therein, and that, *in addition thereto*, the presence of the words "as the seller shall elect" preserves their normal remedy of reselling the property and suing the purchaser for the difference between the original purchase price and the resale price. However, we find no merit in that contention.

The applicable law is well settled to the effect that, in the absence of a forefeiture or liquidated damages clause in the agreement of sale, where a purchaser fails to make settlement under an agreement in writing for the purchase of real estate, the seller has a choice of remedies. He may tender the deed and sue for the balance of the purchase money (Heights Land Company v. Swengel's Estate, 319 Pa. 298 (1935); Black v. American International Corporation, 264 Pa. 260 (1919); Keily v. Saunders, 236 Pa. 593 (1912); Sanders v. Brock, 230 Pa. 609 (1911); Tudesco et ux. v. Wilson, 163 Pa. Superior Ct. 352 (1948); Lichetti v. Conway, 44 Pa. Superior Ct. 71, 73 (1910)) or he may sell the property, after notice, upon the same or as advantageous terms as in the first sale and, if a loss results therefrom, he may recover the same from the defaulting purchaser: Sanders v. Brock, supra; Bowser v. Cessna, 62 Pa. 148 (1869); Ashcom v. Smith, 2 P. & W. 211 (1830); Goodritz v. McMahon, 64 Pa. Superior Ct. 479 (1916).

A practice of long standing has grown up in our State and elsewhere of inserting a forfeiture or liquidated damages clause in the agreement of sale, in order to permit the seller to retain the deposit money and to call off the sale instead of invoking either of the remedies mentioned above. Such clauses usually provide that: ". . . in the event of a default . . . the deposit may (at the option of the party of the first part) be retained as liquidated damages. . . ." The parentheti-

cal language frequently appears in the standard printed forms.

Aside from the question of whether such a clause is one for liquidated damages or one for a penalty, the interpretation given clauses of this type as affecting the remedies available to the seller has by no means been uniform. A majority of the decisions articulate the rule that, unless the agreement by clear and unequivocal language provides that a purchaser may terminate it for his own default, such effect will not be given to it so as to permit him to escape by merely forfeiting the deposit money: Korman et al. v. Trainer, 258 Pa. 362 (1917) ; Cape May Real Estate Co. v. Henderson, 231 Pa. 82 (1911) ; Boyd v. Hoffman, 241 Pa. 421 (1913) ; Weaver v. Griffith, 210 Pa. 13 (1904) ; Vito v. Birkel, 209 Pa. 206 (1904) ; Shermet v. Embick, 90 Pa. Superior Ct. 273 (1926) ; contra: Yoder v. Strong, 227 Pa. 432 (1910) ; Addesso v. Gargalli, 26 Dist. R. 169 (1916) ; Lichetti v. Conway, supra. Cf. Riling v. Idell, 291 Pa. 472 (1928). Many of the same decisions rest in part on the theory that such a clause is presumed to be for the benefit of the seller, who may elect either to assert and enforce the forfeiture, or to insist upon the performance of the contract. See for example, Korman v. Trainer, supra; Cape May Real Estate Co. v. Henderson, supra; Vito v. Birkel, supra, and Shermet v. Embick, supra. This result appears uniform where the clause in the agreement gives the seller an option or election to enforce the forfeiture provision. Where, however, the words "at the option of the party of the first part" or "as the seller shall elect" do not appear in the agreement, our courts have taken the view that the seller has specifically agreed to restrict his remedy to the forfeiture of the deposit money in lieu of any other remedy: Addesso v. Gargalli, supra; Lichetti v. Conway, supra. Cf. Riling v. Idell, supra. Contra,

Boyd v. Hoffman, supra. See Ladner, Conveyancing in Pennsylvania, vol. 1, §45(c).

While some of the cases referred to above are in apparent confusion, it is settled that parties to a contract may stipulate in advance the amount to be paid in compensation for loss or injury which may result in the event of a breach of the agreement: Kunkel v. Wherry, 189 Pa. 198 (1899). Similarly, where there is present in the agreement of sale a contractual stipulation for liquidated damages, the intention of the parties as stated therein is controlling, and courts are bound to give effect to the contract of the parties in the absence of fraud or unconscionable oppression: Tudesco v. Wilson, supra, and see Percy A. Brown & Co. v. Raub et al., 357 Pa. 271 (1947).

The instant case because of its facts is not controlled by those decisions where the forfeiture clause was inserted in order to give the seller a third remedy, one which he could elect to waive. The problem before us is without precedent and we choose to be guided by the applicable canons used in the interpretation of contracts. "The cardinal rule . . . is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles": Percy A. Brown & Co. v. Raub, supra, at page 287. Here the parties chose to set forth the remedies of the seller. It is apparent from a reading of the clause that in the event of a default, ". . . the sum or sums paid on account *are to be retained* by the seller, *either* on account of the purchase money, *or* as compensation for the damages and expenses he has been put to in this behalf, as the seller shall elect. . . ." (Italics supplied.) It is to be noted that the italicized language is positive and mandatory. Plaintiffs' contentions would have more appeal if the phrase "are to be retained" had read "may be retained".

It is understandable where the agreement gives the seller a third remedy, and also provides that he may exercise his option to enforce the particular remedy, or waive the same and resort to his law-given remedies, that the purchaser should be held to the terms of the agreement and the clause construed for the benefit of the seller. Cf. Tudesco v. Wilson, supra. But this rule, and the rule that a defaulting buyer cannot set up his own default to work a forfeiture of his own contract, must give way where the parties have expressly contracted in advance to limit the remedies of the injured party. To say that this result has not clearly been effected in the instant case would be tantamount to so interpreting the clause in this contract as to cause it to constitute a trap for the unsuspecting purchaser.

For the reasons assigned herein the preliminary objection is sustained and the complaint dismissed.

Judge Sloane concurs in this opinion.

### Dissenting Opinion

CRUMLISH, J., April 10, 1950.—This matter is before Oliver P. J., and Crumlish, J., on preliminary objections.

By written agreement, plaintiffs contracted to sell a house and lot to defendants for the sum of $13,500. $1,000 was paid on account of the purchase price, and the balance was to be paid at the time of settlement, September 20, 1948, by defendants giving to plaintiffs a purchase money mortgage for $9,000 and $3,500 in in cash. The agreement provides, inter alia:

"Should the buyer fail to make settlement as herein provided, the sum or sums paid on account are to be retained by the seller, either on account of the purchase money, or as compensation for the damages and expenses he has been put to in this behalf, as the seller

shall elect, and in the latter case this contract shall become null and void and all copies to be returned to seller for cancellation."

The agreement also provides for a waiver of tender of deed.

According to the complaint, defendants paid to plaintiffs $1,000 on account of the purchase price; on or about September 17, 1948, the time for settlement was extended to October 5, 1948, and on or about October 2, 1948, defendants informed plaintiffs that they were unable to comply with the terms of the contract. Thereupon plaintiffs placed the property on the market for resale. On or about April 20, 1949, plaintiffs sold the premises to a third person for $11,750. Plaintiffs bring this action for the recovery of the broker's commission on the resale, advertising, apportioned taxes, water and sewer rent, and the deficiency in the sale price.

Defendants take the position that plaintiffs are limited to the sum paid on account as liquidated damages under the terms of the contract.

The question involved may be stated thus: Where a written contract for the sale of real estate gives the vendor, upon default of the vendee, an election to retain the money paid on account of the purchase price either as liquidated damages, or on account of the purchase price, is the vendor limited to the sum designated as liquidated damages or may he retain the same and sue the vendee for the damages sustained upon a resale of the property at a lower price? The question is apparently res nova. Counsel have not cited a written authority in point, and I have been unable to find any. Judge Ladner in his excellent work, Conveyancing in Pennsylvania, has furnished a helpful guide.

It is well settled that where a written agreement for the sale of real estate provides that the sum or sums paid on account of the purchase price may be retained

by the vendor as liquidated damages in the event the vendee fails to make settlement, the vendor's claim for damages is limited to the amount paid on account (Riling v. Idell, 291 Pa. 472 (1928) ; Lichetti v. Conway, 44 Pa. Superior Ct. 71 (1910)), unless, for example, the amount agreed upon constitutes so large a portion of the contract price as to be excessive and unreasonable and to amount to a penalty: Artzerounian v. Demetriades, 276 Pa. 303 (1923). However, in the instant case, the parties did not so limit the vendors. Here, the contract gave the vendors an election. The clause under consideration gave the vendors, therefore, three remedies: "(a) to . . . sue for the balance of the purchase price, (b) to re-sell the property and sue for the loss, if any, and (c) to call the sale off and keep the deposit money as liquidated damages": Ladner, Conveyancing in Pennsylvania, vol. I, sec. 45(c), page 85. Defendants argue that plaintiffs are limited either to: (a) Sue for the balance of the purchase price, which is in the nature of a specific performance, or (b) acquiesce in defendant's breach in disaffirmance of the contract, and claim and retain whatever sum the agreement stipulated may be forfeited as liquidated damages." With this argument I do not agree. What defendants overlook is that the "presumption is that the forfeiture clause is for the benefit of the grantor and enforceable at his election": Korman et al. v. Trainer et al., 258 Pa. 362, 365 (1917). If plaintiffs had been able to sell at the same price (Lichetti v. Conway, supra) or at an increased price (Sanders v. Brock, 230 Pa. 609 (1911)), they would have been entitled to pocket the sum paid on account as liquidated damages; but, where, as in the instant case, they sold at a lower price, they are entitled to be made whole, because, admittedly, the default was solely on the part of defendants. To agree with defendants' argument would be, in effect, to allow defendants to take advantage of their

own wrong. See Cape May Real Estate Co. v. Henderson, 231 Pa. 82, 85 (1911). However, after joinder of issue, the presumption in favor of plaintiffs may be overcome by facts thus showing that plaintiff elected and limited himself to the deposit money as liquidated damages. Summary judgment should be entered on pleadings only in clear cases: Kidder Elevator Interlock Co. v. Muckle, 198 Pa. 388 (1901); Moore v. Luzerne County, 262 Pa. 216 (1918); Commonwealth Finance Corp., Inc., v. Ferrero, 269 Pa. 264 (1921); Rhodes v. Terheyden et al., 272 Pa. 397 (1922).

Accordingly, I would overrule defendants' preliminary objections with leave to file an answer to the merits within 20 days from the date hereof.